## VREELAND vs. THE NEW JERSEY STONE COMPANY and others.

1. An answer must answer fully all the material allegations and charges in the bill, and all the interrogatories founded upon and incidental to them. This rule is strictly adhered to in cases of fraud.

2. The insufficiency of the answer in important particulars, is sufficient ground for refusing to dissolve an injunction, granted upon filing the bill.

3. An injunction will not be dissolved upon new matter set up in the answer, not responsive to the bill.

On exceptions to master's report, and motion to dissolve injunction.

*Mr. Isaac S. Taylor*, for complainant.

*Mr. Jacob Weart*, for defendants.

THE CHANCELLOR.

The bill is filed for an injunction to restrain the defendants, the New Jersey Stone Company, from declaring the stock held by the complainant in that company, forfeited for non-

Vreeland *v.* New Jersey Stone Co.

payment of an installment of five per cent. for which the directors have called. The complainant asks the relief on the ground of fraud. The company was incorporated by a special act of the legislature of this state. The amount of its capital is $100,000, divided into one thousand shares, of which each of the five directors, except James H. Startup, owns one hundred, and he owns two hundred. The stock held by the directors, with that held by Anness, one hundred shares, and that held by the complainant, is all that has been taken or subscribed. All the stockholders, other than the complainant, are, with the company, defendants. The complainant alleges in substance, that a call for fifty-two and a half dollars per share, made in May, 1872, and which he paid, was fraudulently designed by the other stockholders, five of whom are the directors, to affect and to obtain money from him alone, and that none of the rest of the stockholders have paid anything into the company, but that the other stockholders have conspired to defraud him by means of the calls, on the pretence that the company has purchased from Startup, a lease for a certain quarry in Ulster county, New York, at the price or premium of $35,000, and has paid for it in cash. The complainant charges that it has made no such purchase and that if it has, it is a gross fraud on him ; that the alleged price is an enormous one for the lease, which was made January 1st, 1873, to Startup for a term of nine years and three months from that date, reserving a rent of only $1500 for the whole term.

The defendants answered. Exceptions were filed to the answer. They were referred to a master who has reported, sustaining them. To his report the defendants excepted.

The first exception to the answer is, that the lease, a copy whereof is attached to the bill, is not admitted or denied. This exception is well taken. The complainant has a right to an answer on this point, but there is none whatever.

The second exception is also well taken. That part of the bill to which it relates, charges combination and conspiracy among the individual defendants, to give themselves a ficti-

tious and fraudulent credit on their stock, by reckoning and allowing to Startup $35,000, as the value of the lease, and applying the amount to the payment of the installment of fifty-two and a-half dollars per share on his and their stock. This is not answered. The charge is of a particular combination. A particular answer must be given. The general denial will not do. *Story's Eq. Pl.*, § 806.

The third exception must also be allowed. The bill alleges that when the installment of fifty-two and a-half per cent. was called for, the complainant was assured by the directors, and it was understood between him and them, that the like installment had been called for and demanded from all the subscribers to the stock of the company, upon the whole amount of the subscriptions, and that all of them, except him, had already paid it in full. It charges that the installment had not been paid by any other stockholder, and the interrogatory calls for an answer as to how, and to what extent and amount, the assessments upon the respective subscriptions of the other stockholders have been paid. The answer on this point simply says, that the defendants "deny that said assessment had not been paid by the other stockholders, but (say) that each one of the other stockholders had paid up their fifty-two and one-half per cent. subscription." This is entirely insufficient.

The fourth exception must be sustained. The bill calls on the company in its interrogatories, which are based on sufficient statements, for a disclosure and discovery of its title to the lands on which its operations are conducted, with the true consideration paid or agreed to be paid therefor, and the manner and time of such payment made or agreed to be made, and to whom the same was or is to be paid, and also, the true consideration of any and all conveyances, leases, contracts, assignments or agreements under which the lands or any interest, rights or privileges therein, are held and enjoyed by the company, and to whom, when and in what manner such consideration was paid or is to be paid. The answer is in this respect evasive and insufficient.

The fifth exception has reference to the call in the bill upon the company, for an account of all moneys received from assessments on the subscriptions to the stock and the full amount of the earnings of the company from the commencement of its operations to the present time. The bill alleges a refusal on the part of the officers of the company to furnish the information to the complainant, in regard to the moneys or equivalents thereof, received in payment of the installments or assessments on the stock. The answer on this point merely says, that the accounts and expenditures are open to the examination of the complainant at any time, and refers to a trial balance sheet annexed to the answer. This exception, so far as the moneys received from assessments is concerned, must be allowed. The balance sheet is in no sense such an account of those moneys as the defendants are bound to give. The only statement on that score which it contains, is " capital stock paid in, $44,463.42." They could readily have given the amounts received from each of the seven stockholders, on account of the two calls which have been made, and they were bound to do so.

Having undertaken to answer the bill, they must, according to the general rule, answer fully all the allegations and charges in it, and all the interrogatories founded upon and incidental to them. *Story's Eq. Pl.,* § 605; *Hogencamp* v. *Ackerman,* 2 *Stockt.* 267; *Brown* v. *Fuller,* 2 *Beas.* 271. This rule is strictly adhered to in cases of fraud. *Mech. Bank* v. *Levy,* 1 *Edw.* 316; *Scull* v. *Reeves,* 2 *Green's Ch.* 84; *Smith* v. *Loomis,* 1 *Halst. Ch.* 60. The master's report must be confirmed, the exceptions sustained, and the answer adjudged insufficient.

The motion to dissolve the injunction must be denied. The insufficiency of the answer, in the important particulars which form the basis of the exceptions, is reason enough for denying the motion. *Mervin* v. *Smith,* 1 *Green's Ch.* 182; *Scull* v. *Reeves,* 2 *Green's Ch.* 84; *Everly* v. *Rice,* 3 *Green's Ch.* 553; *Teasey* v. *Baker,* 4 *C. E. Green* 61. The ground on which the motion was placed, was that of estoppel, that the

complainant, when he subscribed for and took his stock, had full knowledge of the transaction of which he now complains. The complainant, by his affidavit read on the hearing, denies the imputed notice.    He subscribed. for his stock about the 25th of May, 1872.    The lease from Terwilliger to Startup, appears not to have been made until January 1st, 1873—seven months afterwards.    It does not appear when the assignment from Startup to the company was made.    The answer is silent on this point, though it states it was recorded June 5th, 1873, which was three months after the filing of the bill.    The lease to Startup, therefore, was not made until three months after the complainant's note for $5250, given for the first installment, was paid.    The resolution, of which it is alleged in the answer the complainant had notice, but which notice he denies, authorized the president and secretary of the company to "purchase the lease of lands owned by James H. Startup, at an expense of $35,000, the said lands consisting of two hundred acres, more or less, and situated at Port Benjamin, Ulster county, state of New York."    At that time, May 9th, 1872, Startup had no lease for the premises. It is said in the answer, indeed, but only indirectly, however, that he had a contract for it at that time.    It is, obviously, impossible to determine the merits of the controversy at this stage of the suit.    Apart from these considerations bearing upon the merits, the rule forbids a dissolution based on this new matter, not responsive to the bill, especially in view of the complainant's denial.    *Brewster* v. *City of Newark*, 3 *Stockt.* 114; *Morris Canal and Banking Co.* v. *Jersey City*, 1 *Beas.* 227; *Green* v. *Pallas*, 1 *Beas.* 267; *Huffman* v. *Hummer*, 2 *C. E. Green* 263.